IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHRISTOPHER DARNELL, DANIEL T. LEWIS, )
SAMANTHA ZUKOWSKI, CHARLES TRAYAL, )
and LIBERTARIAN PARTY OF TENNESSEE )
                                Plaintiffs, )
                                          )   Case No. 3:23-cv-01266
 v.                                          )   JUDGE TRAUGER
                                          )
TRE HARGETT, in his official capacity as )
Secretary of State for the State of Tennessee, )
and MARK GOINS, in his official capacity as )
Coordinator of Elections for the State of Tennessee, )
                                   Defendants. )

PLAINTIFFS' MEMORANDUM BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS UNDER FED. R. CIV. P. 12 (b) (6)

I.  INTRODUCTION

    The instant case is a ballot access case on behalf of four registered Tennessee voters and the Libertarian Party of Tennessee challenging the ballot access laws for the formation of a new political party in Tennessee as applied to them pursuant to the requirements of Tenn. Code Ann., §§ 2-1-104(a)(14), 2-1-104(a)(23), 2-1-104(a)(30); 2-1-114; 2-5-208(d)(1); 2-13-107(a)(2), 2-13-107(e)(2); and 2-13-201(1).  Plaintiffs filed the instant case questioning the constitutionality of the aforesaid ballot access laws because of the failure of any new political party in Tennessee to comply with said laws since 1968 (a total now of 56 years), the large number of petition signatures required (43,498 being 2.5 percent of the total votes cast for Governor of Tennessee in the most recent gubernatorial election) along with the petition deadline and time period to collect said petition signatures, which--when considered in combination with each of the ballot access laws for new political parties in Tennessee as compared with the relatively easier petition requirements for

independent candidates—will result in Libertarian Party candidates being forced to petition as independents and being placed and labeled on the general election ballot as independent candidates rather than their true identification as Libertarians—which would provide accurate rather than inaccurate candidate political identification to potential Tennessee voters. [Complaint, ECF Doc. No. 1, ¶ V].

On January 30, 2024, Defendants Tre Hargett, Secretary of State for the State of Tennessee, and Mark Goins, Coordinator of Elections for the State of Tennessee, filed a Motion to Dismiss [ECF Doc. No. 11] and Memorandum of Law in Support of Defendants' Motion to Dismiss [ECF Doc. No. 12]. The Defendants' aforesaid pleadings allege, in effect, that Plaintiffs failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6) or show an injury fairly traceable to the conduct of the Defendants that could be redressed by a favorable decision. The Defendants' Motion to Dismiss is without merit and, therefore, should be denied.

## II. STANDARD OF REVIEW

In judging a motion to dismiss, the U.S. Court of Appeals for the Sixth Circuit views the factual allegations in the complaint as true and construed in the light most favorable to plaintiff. *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). Therefore, all material allegations in the complaint are accepted as true and should be construed in the light most favorable to the party opposing the motion to dismiss with the court to then determine whether the complaint states a valid claim for relief. Thus, to evaluate a complaint's sufficiency, courts in the Sixth Circuit follow three steps. "First, the court must accept all of the plaintiff's factual allegations as true. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). Second, the court must draw all reasonable inferences in the plaintiff's favor. *Id*. And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). Or, as another federal circuit Court of Appeals has held: "Dismissal for failure to state a claim is proper only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved." *Kelson v. City of Springfield,* 767 F.2d 651, 653 (9th Cir. 1985). However, the "complaint" must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. at 678. A complaint need not contain detailed factual allegations, but it must provide the grounds for entitlement for relief and not merely a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), quoting in part, *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990).

      Plaintiffs' complaint herein challenges Tennessee election laws requiring an unnecessarily early petition signature deadline and limited petitioning period and a petition signature requirement that has not been complied with since 1968, and which in total are unconstitutionally burdensome and serve no compelling state interest, while having a serious effect on a minor political party and its potential candidates and voters. Motions to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) are not viewed with favor and were once held to only be appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). More recently, Justice Souter suggested that the aforesaid *Conley* quote should be retired, but that a complaint should not be dismissed simply because a Court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even when the likelihood of recovery appears remote. *Id.*

### III. ARGUMENT AND AUTHORITIES

In considering Defendants' motion to dismiss, it is perhaps best to consider what the Plaintiffs are asking for in the case at bar and the particular facts which will be presented to the Court at any subsequent motion for injunctive relief and/or a trial of the merits of the case. It should be remembered at this point that the U.S. Court of Appeals for the Sixth Circuit particularly admonished the parties and the trial court in one of the several cases[1] under the style of *Green Party of Tennessee v. Hargett,* 767 F.3d 533, 554 (6th Cir. 2014) that it did not want the issues of the case decided again on cross motions for summary judgment, but rather after ". . . substantial development of the record." *Id.* Considering the passage of additional years since the last two decisions (which are both unreported in the official reporters) in *Green Party of Tennessee v. Hargett,* 2016 WL 4379150 (M.D. Tenn. 2016) and *Green Party of Tennessee v.*

---

[1] The several *Green Party of Tennessee v. Hargett* cases—which also involved the Constitution Party—began in 2011 and continued through 2017. *Green Party of Tennessee v. Hargett*, 882 F.Supp.2d 959 (M.D. Tenn. 2012), *rev'd.*, *Green Party of Tennessee v. Hargett*, 700 F.3d 816 (6th Cir. 2012); *Green Party of Tennessee v. Hargett*, 953 F.Supp.2d 816 (M.D. Tenn. 2013), *vacated and remanded*, *Green Party of Tennessee v. Hargett*, 767 F.3d 533 (6th Cir. 2014); *Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015); *Green Party of Tennessee v. Hargett*, 2016 WL 4379150 (M.D. Tenn. 2016); and *Green Party of Tennessee v. Hargett*, 2017 WL 4011854 (6th Cir., May 11, 2017).

*Hargett*, 2017 WL 4011854 (6th Cir., May 11, 2017) with the district court reaching its final decision only after a full non-jury trial on the issues presented therein as well as considering "the Sixth Circuit's strictures in 2014 against deciding a case by way of summary judgment motions, it is not hard to imagine how the Sixth Circuit would look with disfavor on a decision in the instant case by the granting of a motion to dismiss without first hearing the newer, more developed facts in the instant case.

Plaintiffs' complaint [ECF Doc. No. 1, ¶¶ I, II, IV, V, VII, and VIII alleges the following facts: The individual Plaintiffs in the case at bar are residents and registered voters of Tennessee, citizens of Tennessee and the United States of America, officers, political candidates for elective office, and/or supporters of the Libertarian Party of Tennessee, and signers and/or supporters of a petition for recognition of the Libertarian Party of Tennessee as a Tennessee political party in 2024. Two of the Plaintiffs (Christopher Darnell and Daniel T. Lewis) are potential candidates of the Libertarian Party of Tennessee for elective office in Tennessee for the General Election to be held on November 5, 2024. The individual Plaintiffs in the instant case wish to have the Libertarian Party of Tennessee recognized as a political party in Tennessee and wish to have the right to cast their votes effectively for Libertarian Party of Tennessee candidates who are identified on the ballot as Libertarians rather than as Independent candidates in the 2024 Tennessee general election and future Tennessee elections.

The Defendants in the case at bar, as pled in Plaintiffs' complaint, are the state officials who are statutorily responsible in their official capacity for, *inter alia*, administering the election laws of Tennessee pursuant to Tenn. Code Ann., § 2-1-104(a)(14), *et seq*. Plaintiffs then go on to spell out all the duties of the Defendant Secretary of State and Defendant Coordinator of Elections in paragraph II of Plaintiffs' complaint [ECF Doc. No. 1, ¶ II]. Defendant TRE

HARGETT in his official capacity as the Secretary of State is the Chief Officer of the Tennessee Department of State, and as such, is charged with administering the duties imposed upon the Secretary of State by law including administratively overseeing the State Election Commission, appointing the Coordinator of Elections to serve as the Chief Administrative Election Officer for Tennessee for the purpose of generally supervising all Tennessee elections, advising all election employees of the State as to the proper method of performing their duties, authoritatively interpreting the election laws for all persons administrating them, and such other functions as are necessary for the conducting of elections in Tennessee and the recognition of new political parties, all pursuant to Tenn. Code Ann.§§ 4-3-2101, 4-3-2103, 8-3-104, 2-11-201, and 2-11-202. Defendant MARK GOINS in his official capacity as the Coordinator of Elections is the Chief Election Officer for Tennessee pursuant to Tenn. Code Ann. § 2-11-201(b), is appointed by and serves at the pleasure of the Secretary of State pursuant to Tenn. Code Ann.§ 2-ll-201(a), makes rules and regulations as necessary to carry out the provisions of the Tennessee Election Code subject to the concurrence of the Secretary of State, pursuant to Tenn. Code Ann. § 2-11-201(c), and, as Chief Election Officer for Tennessee, is charged with the duties of overseeing the election laws of Tennessee and the recognition of new political parties pursuant to Tenn. Code Ann. §§ 2-1-104(a)(14) (which sets out the definitions of a political party in Tennessee); 2-1-104(a)(23) (which sets out the requirements for a recognized minor party to successfully turn in a petition signed by registered voters of at least 2.5 percent of the total number of votes cast in the most recent gubernatorial election as well as the petition format requirements); 2-1-104(a)(30) (which defines a statewide political party to have had at least one of its candidates for statewide office to have received 5 percent of the total vote cast for

6

the gubernatorial candidates in the most recent election for governor); 2-1-114 (which sets out the requisites for political parties as to oath and party rules); 2-5-208(d)(1) (which sets out how the names of political parties and independent candidates shall be listed on the ballot); and 2-13-107(a)(2) (which sets out the date and time deadline for filing the minor party petition at least 90 days before the general election); 2-13-107(e)(2) (which sets out the requirement that a recognized minor party must satisfy the requirements of § 2-1-114 by September 1 before the general election or have its candidates listed as independent candidates); and 2-13-201(1) (which requires a political party candidate to be of a statewide political party or a recognized minor party in order to appear on the ballot).

In regard to any petition drive to place the Libertarian Party of Tennessee and its candidates on the ballot in Tennessee in 2024 for the General Election on November 5, 2024, as a recognized political party under the constraints and requirements of the current political party petitioning laws in question herein, the Libertarian Party of Tennessee and its supporters have alleged in their Complaint that said constraints and requirements are beyond the capacity of the Libertarian Party of Tennessee and its supporters to achieve and at present are virtually impossible to comply with. [Complaint, ECF Doc. No. 1, ¶ V and VIII]. In this regard the failure of any unrecognized political party to successfully petition in Tennessee for political party recognition since 1968 speaks volumes about the difficulty of the ballot access laws at issue herein. The U.S. Supreme Court has ". . . held that to comply with the First and Fourteenth Amendments the State must provide a feasible opportunity for new political organizations and their candidates to appear on the ballot." *Storer v. Brown*, 415 U.S. 724, 746 (1974). The U. S. Supreme Court also noted that ". . . the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Id.* at 745. The fact that Tennessee has relatively easy ballot access for independent candidates

7

(i.e., 25 petition signatures except for the 275 petition signatures required for independent presidential candidates) does not excuse the unnecessarily difficult and rarely complied with requirements for new political party recognition. It might well be wondered if Tennessee ". . . is willing to encourage minority political voices, but only if they are partially stripped of a legitimizing party label." *McLain v. Meier*, 637 F.2d 1159, 1165, n.12 (8th Cir. 1980).

Plaintiffs seek declaratory and injunctive relief from the Court. Plaintiffs specifically seek to have Tenn. Code Ann., §§ 2-1-104(a)(14); 2-1-104(a)(23); 2-1-104(a)(30); 2-1-114;[2] 2-5-208(d)(1); 2-13-107(a)(2); 2-13-107(e)(2); and 2-13-201(1) on its face and as applied to the Plaintiffs herein for the 2024 Tennessee General Election and all subsequent general elections in Tennessee and the facts and circumstances relating thereto, declared unconstitutional. While this case is specifically concerned with asking for declaratory relief holding the election laws in question unconstitutional, Plaintiffs are also requesting injunctive relief either placing the Libertarian Party of Tennessee on the Tennessee ballot for the next General Election after a sufficient showing of support having been made by way of a constitutionally reasonable level of required petitioning political support or an alternative requirement of petitioning similar to that required of independent candidates.

It is undisputed that restrictions on access to the election ballot ". . . place burden on two different, although overlapping, kinds of rights--the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). "The

---

[2] Defendants are correct on page 3, footnote 1, of their Memorandum of Law in Support of their Motion to Dismiss that subsection (1) of § 2-1-114 was held unconstitutional in 2015. *Green Party of Tennessee v. Hargett*, 791 F.3d at 696. However, the Tennessee Legislature has not yet repealed or modified said subsection.

freedom to associate as a political party, a right we have recognized as fundamental [*Williams v. Rhodes*, 393 U.S. at 30-31], has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because, absent recourse to referendums, 'Voters can assert their preferences only through candidates or parties or both,' *Lubin v. Panish*, 415 U.S. 709, 716 (1974);" *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 814 (1979).

When these fundamental, constitutionally protected rights are unreasonably or unfairly limited or denied, relief is available to set aside restrictions or denial in an action such as in the instant case. It is the contention of the Plaintiffs urging this lawsuit that Tennessee has gone too far in infringing the Plaintiffs' rights to political association and ballot access for general elections. The teaching of the United States Supreme Court is that:

> "even when pursuing a legitimate interest, a state may not choose means that unnecessarily restrict constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51 (1973), and we have required that states adopt the least drastic means to achieve their end. *Lubin v. Panish*, 415 U.S. at 716 . . .; *Williams v. Rhodes*, 393 U.S. at 31-33 . . .. This requirement is particularly important where restrictions on access to the ballot are involved. The state's interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the development of the nation. [emphasis added] *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. at 185.

"As our past decisions have made clear, the significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest [citations omitted]. If the state has open to it a least drastic way of satisfying its legitimate interest, it may not choose a legislative scheme that broadly stifles the exercise of fundamental liberties. *Shelton v. Tucker*, 364 U.S. 479 [1960]." *Kusper v. Pontikes*, 414 U.S. at 58-59. In deciding what the "least drastic or restrictive means," is, it is necessary for the Court to ". . . consider the facts and circumstances

9

behind the law, the interest which the state claims to be protecting, and the interests of those who are disadvantaged by the Classification." *Storer v. Brown*, 415 U.S. 724, at 730 (1974), citing *Williams v. Rhodes, Id.*, and *Dunn v. Blumstein*, 405 U.S. 330 (1974). Also see, *Mandel v. Bradley*, 432 U.S. 173 (1977).

Tennessee's unnecessarily limited petitioning time period and early petition deadline coupled with the high political party petition signature requirement--i.e., 2.5 percent of the total number of votes cast for all gubernatorial candidates in the most recent Tennessee gubernatorial election, which has not been complied with since 1968, are unconstitutional, lack any compelling interest, and unequally and unfairly impact in a discriminatory manner the rights of minor, unrecognized political parties and their potential voters in Tennessee. The number of signatures currently required in Tennessee (43,498)[3] is almost twice as many as the 22,000 petition signatures referenced in *American Party of Texas v. White*, 415 U.S. 767 (1974), wherein the Supreme Court noted that ". . . 1% of the vote for governor at the last general election and in this instance, 22,000—falls within the outer boundaries of support the State may require before according political parties ballot position." *Id*. at 783. Instead, Tennessee has extremely easy requirements for independent candidates to be listed on Tennessee's General Election ballot, but only with any political party identification stripped from the ballot. (Complaint, ECF Doc. No.

---

[3] The 43,498 petition signatures currently required in Tennessee under the 2.5% of the vote for governor at the last general election is not only significantly greater than the 20,000 petition signatures under the 1% of the vote for governor at the last general election that Texas required in the *American Party of Texas v. White* case, but is even more severe than the requirement in Texas at that time because of the far greater population size in Texas as compared to Tennessee as well as being higher than the 40,039 valid petition signatures required originally at the time of the *Green Party of Tennessee v. Hargett* decisions.

10

1, ¶ VI). The laws in question challenged herein, when considered with the facts set forth in Plaintiffs' complaint are unconstitutional on their face and as applied to Plaintiffs.

As the United States Supreme Court has stated in regard to ballot access laws:

> A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties [citation omitted]. By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas. *Anderson v. Celebrezze*, 460 U.S. at 793-794.

In considering Defendants' Memorandum of Law herein as to the various *Green Party of Tennessee v. Hargett* cases cited by the Defendants, said cases are not factually and materially on point because of the passage of time since they were decided, the different political parties involved therein (Green and Constitution), and the historical record since the aforesaid *Green Party* cases were decided as to the continued failure of any minor political party in Tennessee to comply with the laws in question because, as the U.S. Supreme Court has stated in considering ballot access and election laws and the historical record of political parties' participation in elections, "[p]ast experience will be helpful, if not always an unerring guide." *Stower v. Brown*, 415 U.S. at 742. See also, *Libertarian Party of Tennessee v. Goins*, 793 F. Supp.2d 1064, 1069-1070 (M.D. Tenn. 2010)[4] (discussing minor political parties' historical election experiences in Tennessee prior to later changes in the ballot access laws) and *Graveline v. Benson*, 992 F.3d 524, 539 (6th Cir. 2021) (recognizing that ". . . Michigan's history reveals

---

[4] While the Libertarian Party of Tennessee was not a party or participant in the various *Green Party of Tennessee v. Hargett* cases, the Green Party of Tennessee and the Constitution Party of Tennessee were parties and participants in the case of *Libertarian Party of Tennessee v. Goins, Id.*

11

the severity of this burden . . . and that [s]ince its implementation in 1988, no independent candidate for statewide office has managed to complete a qualifying petition."). Thus, the unreported *Green Party of Tennessee v. Hargett* cases cited by Defendants, when taken with the strictures of the Sixth Circuit as to not deciding the case again on cross motions for summary judgment, but only after ". . . substantial development of the record." *Green Party of Tennessee v. Hargett*, 767 F.3d at 554, do not support the arguments made by Defendants in favor of their motion to dismiss because of the passage of time and the continued lack of compliance with the ballot laws in question, the different political party involved (Libertarian rather than Green and Constitution), the stage of the current case as opposed to a substantial record created at a non-jury trial, and the fact that ". . . future elections might have different circumstances . . . ." *Graveline v. Benson*, 992 F.3d 524, 539 (6th Cir. 2021).

In contrast, the Sixth Circuit's aforesaid 2021 decision in *Graveline v. Benson* approved a reduction of the number of petition signatures required from 30,000 statewide to just 12,000 and enjoined enforcement of the ballot access statutes for independent candidates in Michigan because the challenged statutes, in combination, violated the First and Fourteenth Amendments because they were not narrowly drawn to advance compelling state interests. *Id*. at 524. Of course, there are differences in the facts and laws between Michigan and Tennessee—particularly as to the requirements for petitions for independent candidates. Nonetheless, the *Graveline* cases do give us some recent guidance from the Sixth Circuit. Originally the district court had issued a preliminary injunction that allowed Graveline to have ballot access if he had

12

at least 5,000 valid petition signatures.[5] *Graveline v. Johnson*, 336 F. Supp. 3d 801, 817 (E.D. Mich. 2018). This decision was upheld when the Sixth Circuit denied a stay request as to the district court's injunction pending appeal. *Graveline v. Johnson*, 747 F. App'x 408, 414-415 (6th Cir. 2018). Thereafter, after both parties filed cross-motions for summary judgment, the district court granted plaintiff's motion for summary judgment and set an interim measure allowing independent candidates to submit 12,000 petition signatures for the 2020 Michigan general election. On appeal the district court's opinion and judgment was affirmed by the Sixth Circuit. *Graveline v. Benson, Id*. Most importantly, the Sixth Circuit noted in *Graveline* that the ". . . Supreme Court instructs us to distinguish between burdens that restrict political participation equally and burdens that 'fall[ ] unequally on new or small political parties or on independent candidates.'" *Graveline v. Benson*, *Id*. at 535, citing *Anderson v. Celebrezze*, 460 U.S. at 793-794. Because of the established status of the two major political parties in Tennessee, neither the Republican nor Democratic parties have ever had to attempt to petition in order to achieve the 2.5 percent Tennessee ballot access petition requirement challenged herein. In evaluating ballot access laws for a political party, the U.S. Supreme Court has stated ". . . that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other." *American Party of Texas v. White*, 415 U.S. at 782, n.13.

---

[5] The Plaintiff Christopher Graveline waited to begin his attempt to qualify for the [Michigan November 6, 2018, general election] ballot until June 4, 2018, with the independent candidate deadline that year being July 19, 2018. *Graveline v. Johnson*, 992 F.3d at 529.

## IV. CONCLUSION

WHEREFORE, premises considered, the Defendants have failed to show under the applicable standard of review for motions to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) that Plaintiffs' complaint fails to state facts sufficient to set out a claim which would entitle the Plaintiffs to relief, and, therefore, the Plaintiffs pray that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted this 13th day of February, 2024.

/s/ James C. Linger
James C. Linger, OBA#5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
Telephone: (918) 585-2797
Facsimile: (918) 583-8283
Email: bostonbarristers@tulsacoxmail.com

Jove Allred, TN BPR #018935
188 Front Street, Box 116-203
Franklin, TN 37064
(629) 256-8424 Telephone
Email: joveallred@gmail.com

Counsel for Plaintiffs

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on all counsel of record via the Court's CM/ECF e-mail notification system on the 13th day of February, 2024.

/s/ James C. Linger
James C. Linger