| | |
|---|---|
| CHRISTOPHER DARNELL, DANIEL T. LEWIS, SAMANTHA ZUKOWSKI, CHARLES TRAYAL, and LIBERTARIAN PARTY OF TENNESSEE, <br><br> Plaintiffs, <br><br> v. <br><br> TRE HARGETT, in his official capacity as the Secretary of State for the State of Tennessee, and MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, <br><br> Defendants. | Case No. 3:23-cv-01266 <br> Judge Aleta A. Trauger |

# MEMORANDUM

The defendants, Tennessee Secretary of State Tre Hargett and Coordinator of Elections Mark Goins, have filed a Motion to Dismiss (Doc. No. 11), to which the plaintiffs have filed a Response (Doc. No. 13), and the defendants have filed a Reply (Doc. No. 14). For the reasons set out herein, the motion will be granted.

## I. BACKGROUND

"In Tennessee, it is easy," or relatively so, for a political candidate to secure a place on the ballot. *Green Party of Tennessee v. Hargett* ("*Green Party III*"), No. 3:11-CV-692, 2016 WL 4379150, at *1 (M.D. Tenn. Aug. 17, 2016). For most offices, only 25 signatures of registered, eligible voters are required for a candidate to appear on an "independent" ballot line. *See* Tenn. Code Ann. § 2-5-101(b)(1). It is considerably more difficult, however, if one wants to appear on the ballot under the name of a political party. Tennessee's election code grants ballot lines to two classes of political party: "statewide political parties" and "recognized minor parties." A "statewide political party" is one that has demonstrated a sufficient level of success in a recent

election—specifically, by having at least one candidate "for an office to be elected by voters of the entire state [who] received a number of votes equal to at least five percent (5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor." Tenn. Code Ann. § 2-1-104(a)(3). A party that cannot satisfy that requirement must qualify for a ballot line as a recognized minor party, which the election code defines as follows:

> "Recognized minor party" means any group or association that has successfully petitioned by filing with the coordinator of elections a petition which shall conform to requirements established by the coordinator of elections, but which must at a minimum bear the signatures of registered voters equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor, and on each page of the petition, state its purpose, state its name, and contain the names of registered voters from a single county,

Tenn. Code Ann. § 2-1-104(23). According to the State of Tennessee, the current number of valid signatures required for such a petition is 43,497.[1] The party must also timely file a copy of its rules with the Coordinator of Elections. *See* Tenn. Code Ann. § 2-1-114(2).

The timing of the required petition for recognition depends on whether the minor party wishes to choose its nominee through the state's system of primaries. "If a party chooses to nominate its candidate by primary election, the deadline for filing the 2.5% signature petition is . . . the first Thursday in April. However, . . . if a party chooses to nominate by its own party rules, rather than by primary election, then the 2.5% signature petition is to be filed . . . 90 days prior to the November general election." *Green Party*, 2016 WL 4379150, at *2 (citing Tenn. Code Ann. § 2-13-107(a)(2)).

For nearly six years starting in 2011, two small political parties—the Green Party of Tennessee and Constitution Party of Tennessee—litigated the constitutionality of Tennessee's minor party ballot rules, with a focus on the petition requirement and its deadlines. *See Green*

---

[1] Tenn. Sec. of State, *Procedures for Recognition as a Political Party*, at
https://sos.tn.gov/elections/guides/procedures-for-recognition-as-a-political-party.

2

*Party of Tenn. v. Hargett*, Case No. 3:11-cv-692. Those parties argued that, while Tennessee's laws were not keeping the parties' candidates off of the ballot as ostensible independents, the difficulty of complying with the minor party recognition requirements improperly infringed upon the First and Fourteenth Amendment rights of new political parties, their candidates, and/or their voters. On two separate occasions, the plaintiffs were granted summary judgment, but, in each instance, the Sixth Circuit reversed and remanded for further proceedings. See *Green Party of Tennessee v. Hargett* ("*Green Party I*"), 700 F.3d 816 (6th Cir. 2012); *Green Party of Tennessee v. Hargett* ("*Green Party II*"), 767 F.3d 533 (6th Cir. 2014).

Finally, Judge Waverly D. Crenshaw, Jr.—to whom the case was assigned after another district judge retired—held a two-day bench trial, after which he held that the plaintiffs "failed to prove that the challenged Tennessee election statutes offend the First and Fourteenth Amendments," and the court entered judgment for the defendants. *Green Party III*, 2016 WL 4379150, at *40. The plaintiffs appealed, and the Sixth Circuit affirmed the district court's judgment on the merits in an unreported decision. *See Green Party of Tennessee v. Hargett* ("*Green Party IV*"), No. 16-6299, 2017 WL 4011854, at *6 (6th Cir. May 11, 2017).

The laws that were challenged in that litigation remain unchanged in every material respect. However, another small political party, the Libertarian Party of Tennessee ("LPOT"), along with two of its supporters and two of its potential candidates,[2] have now brought largely the same challenge that the Constitution and Green Parties did. As a procedural matter, the LPOT is within its rights to do so. These plaintiffs were not parties to the other litigation, and there is no binding Sixth Circuit precedent definitively resolving the challenged laws'

---

[2] One of those individual plaintiffs, aspiring candidate Christopher Darnell, died after this motion was briefed. (*See* Doc. No. 15.) The defendants have not suggested that his death affects the other plaintiffs' standing to bring their claims.

3

constitutionality. *See Staub v. Nietzel*, No. 22-5384, 2023 WL 3059081, at *7 (6th Cir. Apr. 24, 2023) (explaining that unreported Sixth Circuit decisions "carry no precedential weight" but may be "persuasive"). The fact that a particular claim is not formally barred by precedent or preclusion, however, does not necessarily mean that the plaintiffs raising that claim are entitled to proceed to discovery. A plaintiff challenging a law anew—like every plaintiff—still has an obligation to plead facts sufficient to support a claim for relief. In this instance, that means pleading facts that would give the court some reason to think that the LPOT's claims could plausibly succeed where the other parties' claims failed.[3]

On December 1, 2023, the LPOT and other plaintiffs in this case filed their Complaint. (Doc. No. 1.)[4] They ask the court to "[d]eclar[e] that Tenn. Code Ann. . . . §§ 2-l-104(a)(l4), 2-1-104(a)(23), 2-1-104(a)(30), 2-1-114, 2-5-208(d)(l), 2-13-107(a)(2), 2-13-107(e)(2), and 2-13-201(1), as applied to the Plaintiffs herein for the 2024 Tennessee General Election on November 5, 2024, and all subsequent Tennessee General Elections, and the facts and circumstances relating thereto, are illegal and unconstitutional" and to enjoin any future enforcement of those laws against LPOT candidates.[5] (*Id.* at 9–10.) On January 30, 2024, the defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6), arguing that the challenged statutes are constitutional for the reasons previously considered in *Green Party* and that these plaintiffs

---

[3] There is, of course, no obligation for a plaintiff to expressly characterize his claims in such a way or to discuss earlier litigation at all. What matters is not whether the plaintiff explicitly distinguishes an earlier case, but whether he has pleaded facts sufficient to support relief in his own case—a question to which earlier litigation may or may not be relevant, depending on the circumstances.

[4] The Complaint does not comply with Rule 10(b) of the Federal Rules of Civil Procedure, which requires each party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Complaint does not do so, instead relying on numbered sections, some of which include multiple paragraphs and others of which include multiple distinct assertions in a single paragraph. The court will cite to the section numbers.

[5] The plaintiffs have not, however, filed a motion for preliminary injunction related to the 2024 general election.

4

"have not alleged any facts to distinguish their particular circumstances from those of the plaintiffs in" that earlier litigation. (Doc. No. 12 at 7.)

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## III. ANALYSIS

**A. Significance of the *Green Party* Cases**

The plaintiffs complain that Tennessee's "unnecessarily early deadline, unnecessarily high number of [required] petition signatures, and limited time for petitioning" improperly and unconstitutionally "force a non-recognized political party candidate in a general election to use the lesser petition signature requirement . . . for Independent candidates." (Doc. No. 1 § VI.) The same or very similar arguments were raised in *Green Party*,[6] and, while the Sixth Circuit opinion concluding that litigation was unreported and therefore non-precedential, it was not that opinion that resolved most of the core substantive legal questions raised by that litigation. Those questions, rather, were addressed in the prior two Sixth Circuit opinions, each of which was reported and is, therefore, binding.

In the first reported opinion, the Sixth Circuit, reversing an award of summary judgment to the plaintiffs, held that "the 2.5% signature requirement, standing alone, is not unconstitutional on its face" and required the district court, on remand, to consider the claims accordingly. *Green Party I*, 700 F.3d at 819 (citing *Am. Party of Texas v. White*, 415 U.S. 767, 789 (1974); *Jenness v. Fortson*, 403 U.S. 431 (1971)). That holding is precedential and applies to this case; the numerical threshold for minor party recognition is, as a matter of law, not unconstitutional on its face.

In the second reported opinion, the Sixth Circuit again reversed summary judgment for the plaintiffs and remanded—this time, with a detailed account of the framework that a district court should apply to a claim of this type. That framework is the one typically referred to as "*Anderson-Burdick*," after *Burdick v. Takushi*, 504 U.S. 428 (1992), and *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1982). *See Green Party II*, 767 F.3d at 545. *Anderson-Burdick* has been described as embodying a "flexible balancing approach." *Ohio Democratic Party v. Husted*, 834

---

[6] When that litigation began, the system of deadlines was different than the current form, but, by the end of litigation, the system was what it is now.

6

Case 3:23-cv-01266    Document 20    Filed 08/23/24    Page 6 of 12 PageID #: 86

F.3d 620, 627 (6th Cir. 2016). When a state's law "'severely' burdens the fundamental right to vote, as with poll taxes, strict scrutiny is the appropriate standard." *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012) (quoting *Burdick*, 504 U.S. at 534). Conversely, laws that impose *no* actual burden on the right to vote or other constitutional right are subject to "a straightforward rational basis standard of review." *Id.* (citing *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807–09 (1969); *Biener v. Calio*, 361 F.3d 206, 214–15 (3d Cir. 2004)). "The distinction between 'severe burdens' and 'lesser' ones," however, "is often murky," *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 443 (6th Cir. 2016) (citation omitted), and "most cases fall in between these two extremes." *Obama for Am.*, 697 F.3d at 429. For those in-between cases, *Anderson-Burdick* calls on the court to apply a "sliding scale," imposing a level of scrutiny proportionate to the burden imposed on a fundamental right. *Daunt v. Benson*, 956 F.3d 396, 408 (6th Cir. 2020).

As the Sixth Circuit acknowledged in *Green Party II*, "[w]hether a voting regulation imposes a severe burden is a question with both legal and factual dimensions." *Green Party II*, 767 F.3d at 547. The district court had previously concluded that Tennessee's history of applying its requirements—and, specifically, the fact that no new party had satisfied those requirements for decades—was sufficient to find a severe burden. The Sixth Circuit, however, disagreed, writing that "the record lacks the factual information" that a court would need "to determine whether [the law] actually imposes a severe burden on the plaintiffs." *Id.* at 549. Such an inquiry was necessary, the court wrote, because the state had not established that its stated interest in avoiding voter confusion was truly "compelling." *Id.* at 549. The Sixth Circuit, however, did not express any doubt that that interest was, at the very least, legitimate—which it would need to be for the law to survive even rational basis review. The Sixth Circuit's holdings that (1) *Anderson-Burdick* applies and (2) the state's proffered rationale is at least potentially sufficient under that

7

framework, depending on the extent of the burden imposed, are, like its earlier holding rejecting facial unconstitutionality, binding.

*Green Party II* was the final precedential holding in that litigation, but it was not the final persuasive one—particularly given the strikingly non-party-specific record that was assembled on remand. For example, Judge Crenshaw noted, in his findings of fact after the bench trial, that "[n]either the Constitution Party nor the Green Party introduced any evidence that they are required to incur any financial costs to collect the necessary signatures." *Green Party III*, 2016 WL 4379150, at *24. They also "presented no evidence as to their difficulty recruiting sufficient volunteers to collect the required signatures" and "no evidence that the April filing deadline imposed a burden on them," relying instead on expert testimony suggesting that "the 2.5% signature requirement is unachievable for minor parties, as a general matter." *Id.* at *25, 34.

In the absence of much party-specific evidence, the court was forced to rely, in significant part, on considering the inherent burdens, if any, that the challenged requirement would place on any party that wished to comply with it. In particular, the court placed the signature requirement's deadlines and scope in the context of Tennessee election law more broadly, which the court found to be generally supportive of petition-gathering:

> Tennessee places few restrictions on the ability of minor parties to collect the necessary signatures. Minor parties are on notice of the number of signatures they are required to collect over three-and-a-half years before the filing deadline, beginning after the gubernatorial election when the State determines the number of signatures required. There is no limitation on the time period for collecting signatures or on how many signatures a minor party may submit. Voters are not precluded from signing petitions based on their party affiliations or participation in a party primary. Voters may sign multiple petitions. There are no residency or other requirements for signature collectors themselves. Individual signatures need not be notarized, nor must the petition itself be notarized. Parties have no geographic restrictions on where signatures are collected. That is, Plaintiffs can collect all the required signatures in one major city, or in several cities, or in one portion of the state. Parties may submit signatures immediately upon collecting them to avoid the problems created when petition signers move or change names. Furthermore, the August deadline for the 2.5% signature petition for minor parties

> not nominating their candidates by primary election—ninety days before the November general election—provides "ample opportunity to collect signatures when voters are engaged, such as during primaries and other elections."

*Id.* at *27 (quoting *Pisano v. Strach*, 743 F.3d 927, 934 (4th Cir. 2014)). In other words, while the 2.5% signature requirement is undeniably high, the state's framework is relatively petitioner-friendly in every other way, particularly by granting a party a strikingly long period of time to gather its signatures and imposing relatively few restrictions on who may sign. Based on that analysis and the limited available evidence, Judge Crenshaw concluded that the plaintiffs had "failed to prove by a preponderance of the evidence *any* burden imposed by the 2.5% signature requirement other than that which is purely conjectural" and that, insofar as any burden did exist, it was "not severe, but instead is reasonable and nondiscriminatory." *Green Party*, 2016 WL 4379150, at *29.

Given the lack of a demonstrated burden, the court applied rational basis review, pursuant to which it found the petition signature requirement to be rationally related to the state's "legitimate and sufficiently weighty" interests in avoiding voter confusion, reducing administrative costs, and ensuring that a new political party actually has some modicum of actual support as a party.[7] *Id.* at *30. The plaintiffs appealed, raising both evidentiary and substantive issues, but the Sixth Circuit rejected those arguments and affirmed the judgment. *Green Party of Tennessee v. Hargett*, No. 16-6299, 2017 WL 4011854, at *6 (6th Cir. May 11, 2017).

Based on the foregoing, the *Green Party* cases are relevant to the court's analysis in this case in at least three significant ways. First, the court is bound, by *Green Party I*, to proceed under the assumption that a 2.5% signature requirement is not unconstitutional, on its face, based

---

[7] The importance of this last interest should not be understated. A system that allowed virtually any candidate to hold himself out as the legitimate representative of a real, appealingly named political party—when, in fact, that "party" was simply a branding exercise concocted to draw unwary voters—would be ripe for abuse.

9

solely on the high number of signatures required. Second, the court is bound, by *Green Party II*, both to apply *Anderson-Burdick* and to do so with the understanding that the defendants' asserted interests are at least *potentially* sufficient to support the challenged laws, depending on the extent of the burdens established. Third, Judge Crenshaw's analysis, though not binding, provides persuasive authority in support of the defendants' position—particularly insofar as these plaintiffs rely on the general burden of the challenged requirements on any new party, as opposed to anything particular about their application to the LPOT.

### B. Application to LPOT's Challenge

None of the aforementioned obstacles for a plaintiff is necessarily insurmountable. The fact that the signature requirement is not unconstitutional on its face does not mean that it will pass constitutional muster against the backdrop of the real world. Similarly, the flexibility of *Anderson-Burdick* means that a state interest that is potentially sufficient may prove not to be, if a meaningful burden can be established. And, finally, merely persuasive authority is just that—merely persuasive, and, in any event, Judge Crenshaw's opinion was based on a bench trial, not a Rule 12(b)(6) motion. It is not difficult to imagine facts that, if true, would permit a plaintiff to overcome those barriers—particularly if, for example, complying with the minor party recognition requirement had, for some reason, become more burdensome since the issue was last considered or was imposing a particular burden on a particular plaintiff.

However, the plaintiffs' strikingly short Complaint provides little, if any, reason for this court to think that the LPOT's challenge has any more merit than the other parties'. Rather, the Complaint merely states, in conclusory fashion, that "it would be virtually impossible to meet the petition deadline for minor political parties of 90 days before the general election . . . because of the unnecessarily high petitioning requirement of a rather stringent 2.5 percent." (Doc. No. 1 § V.) The Complaint alleges no specific details about the LPOT's operations or the particular

challenges that it would face, or has faced, in seeking to comply with the requirements—only that "[c]urrently the supporters of the non-recognized minor political party herein (Libertarian) are unable to marshal its resources in such a manner as to conduct a successful petition drive in Tennessee so as to meet the aforesaid petition signature deadline." (*Id.*) Time and again, the Complaint avoids discussion of the LPOT's particular problems and instead speaks of the law in terms of the burdens faced by "new political parties" generally. (*Id.* ¶¶ II, V–VII, X.)

The bare-bones allegations of the Complaint leave little doubt that the plaintiffs are asking the court to do exactly what the Sixth Circuit cautioned against in the *Green Party* litigation—treat Tennessee's statutes as *per se* unconstitutional, simply because the signature requirement for parties is, on its face, so high. That argument failed in *Green Party*, but not only in *Green Party*—a number of federal courts have upheld similar, and sometimes more demanding, minor party or independent candidate requirements in the face of constitutional challenges. *See Cowen v. Sec'y of State of Georgia*, 22 F.4th 1227, 1232–33 (11th Cir. 2022) (upholding 5% signature requirement with a 180-day petitioning window); *Tripp v. Scholz*, 872 F. 3d 857, 870-71 (7th Cir. 2017) (upholding 5% signature requirement with a 90-day petitioning window did not violate the constitution); *Indiana Green Party v. Morales*, No. 1:22-cv-00518, 2023 WL 5207924, at *3 (S.D. Ind. Aug. 14, 2023) (upholding a 2% signature requirement with a June 30th deadline); *see also Jenness v. Fortson*, 403 U.S. 431, 433 (1971) (upholding 5% signature requirement with 180-day petitioning window).

In the plaintiffs' briefing, they point out that the current version of the state's deadlines—which was legislatively adopted during the *Green Party* litigation—has now been on the books for a few years, and, still, no new minor party has succeeded in securing a ballot line. That passage of time, however, is not alone sufficient to establish a plausible claim for relief. If the Complaint had alleged that those years were marked by parties' actual failed attempts to comply

11

with the requirements, then that would give the passage of time greater weight. *See Graveline v. Benson*, 992 F.3d 524, 530 (6th Cir. 2021) (describing actual expenditures and volunteer hours put toward failed petition requirement for independent candidates). Similarly, if the plaintiffs had identified some demographic, political, or legal change that occurred during those years that had the practical effect of making the requirement more burdensome, that also might have added some plausibility to their claims. The Complaint, however, alleges no such facts.

It is well-settled that Rule 12(b)(6) requires a plaintiff to do more than simply set forth a boilerplate recitation of the applicable legal test accompanied by a claim that, under that test, the plaintiffs should win. That, though, is what these plaintiffs have done. The LPOT has simply recited the law and given the court the equivalent of an IOU for some future valid reason why that law should lead anywhere other than where it led for the Green Party and Constitution Party. That approach is insufficient to state a plausible right to relief, and the court must, therefore, dismiss the plaintiffs' claims.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 11) will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge